UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:09-cr-00194-KJM |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Cesar Figueroa, | |
| Defendant. | |

Defendant Cesar Figueroa moves for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A). He argues his health conditions and a risk of severe illness from COVID-19 are "extraordinary and compelling reasons" to grant his request. The motion was submitted without a hearing and is **denied without prejudice.**

**I.  BACKGROUND**

Mr. Figueroa is currently serving a custodial sentence after violating the terms of a previously imposed term of supervised release. The court thus begins with the offense that led to that supervised release.

About a decade ago, the Drug Enforcement Administration arranged for a confidential informant to buy a quarter pound of cocaine base (crack cocaine) from Mr. Figueroa and another man. *See* Factual Basis, Plea Agmt. Ex. A, ECF No. 48. Mr. Figueroa later pleaded guilty to possessing crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). *See*

1

Superseding Info., ECF No. 47; Plea Agmt., ECF No. 48.  This court sentenced him to 112 months in prison and a 60-month term of supervised release.  *See* J. & Commitment, ECF No. 60. Among other conditions, during his release, Mr. Figueroa was required not to commit another crime, not to possess or use controlled substances unlawfully, not to possess a firearm, and to inform his probation officer of any arrest within 72 hours.  *See id.* at 3–4.

Mr. Figueroa completed his prison sentence and was serving his term of supervised release in 2018, when Sacramento police began investigating him for drug distribution.  *See* Superseding Violation Pet. at 3, ECF No. 146 (charge five); Violation Hr'g Min., ECF No. 153 (recording this court's finding of violations under charges 2, 4, and 5).  Officers eventually saw him carrying a duffel bag containing several pounds of processed marijuana.  *See* Superseding Violation Pet. at 3.  They also found several more pounds of marijuana, a rifle without a serial number, ammunition, and text messages showing he was distributing marijuana illegally.  *See id.* He was arrested, but he did not report his arrest to the Probation Officer assigned to his federal case here.  *See id.* at 3–4.  He pleaded no contest to a state law felony and misdemeanor for possession of the ammunition and marijuana, and he served a sixteen-month prison sentence.  *Id.* at 4.

Because Mr. Figueroa violated the terms of his federal supervised release, a federal warrant was also issued for his arrest.  *See id.* at 1.  He was detained during the federal violation proceedings because he posed a danger to the community.  *See id.* at 4.  This court found he had violated the terms of his supervised release by possessing ammunition and marijuana and by failing to inform his probation officer of his arrest.  *See* Violation Hr'g Min.  The court revoked his supervised release, and committed him to serve a custodial sentence of 24 months with a further term of supervised release for 36 months.  *See id.*  He is currently serving his custodial sentence at FCI Sheridan in Oregon, and his expected release date is in July of this year.  *See* Mot. at 2, ECF No. 158; Opp'n at 3, ECF No. 164.

Mr. Figueroa now moves to reduce his custodial sentence to time served under 18 U.S.C. § 3582(c).  *See generally* Mot., ECF No. 158.  He argues his health conditions, namely obesity and asthma, make him especially vulnerable to serious COVID-19 complications, and he argues

2

1  COVID-19 is spreading at FCI Sheridan. *See id.* at 8–13. The government opposes the motion,
2  arguing (1) Mr. Figueroa has not exhausted his administrative remedies as required by
3  § 3582(c)(1); (2) his concerns about contracting severe COVID-19 must be considered along with
4  his refusal of a COVID-19 vaccine; (3) COVID-19 is under control in the facility; and (4) early
5  release is not supported by the relevant sentencing factors of 18 U.S.C. § 3553(a). *See generally*
6  Opp'n, ECF No. 164. The matter is fully briefed and the court submitted it without a hearing.
7  *See* Reply, ECF No. 166; Minute Order, ECF No. 163.

## II. LEGAL STANDARD

The district court that imposed a sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. Under the statute, a court may consider a defendant's motion to reduce his prison term if the defendant first satisfies an administrative exhaustion requirement. *Id.* § 3582(c)(1)(A). If a defendant has exhausted his administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody, *id.* § 3582(c)(1)(A)(i), or the defendant must meet certain age and sentence restrictions, *see id.* § 3582(c)(1)(A)(ii). Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. *See id.* § 3582(c)(1)(A).

Section 3582 further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended November 1, 2018. *See* U.S.S.G. § 1B1.13. Since the passage of the First Step Act, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding. This court, as it has in previous cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context. The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the

3

community." *United States v. Numann*, No. 16-00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)); *see also United States v. Arceneaux*, 830 F. App'x 859, 859 (9th Cir. 2020) (unpublished) (affirming denial of compassionate release because district court did not err in finding defendant would pose threat to community if released).

"Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the [First Step Act], district courts that have done so have agreed that the burden remains with the defendant." *United States v. Becerra*, No. 18-0080, 2021 WL 535432, at *3 (E.D. Cal. Feb. 12, 2021).

**III.   ANALYSIS**

  **A.   Administrative Exhaustion**

The exhaustion rules of § 3582 require defendants first to seek compassionate release with the warden of the facility where they reside and then either exhaust all appeals or show that at least thirty days have passed without any response from the warden. *See United States v. Miller*, No. 16-00269, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). The court "may credit a defendant's sworn declaration that he filed such requests with the Warden, especially where the Government does not bring forth any evidence to dispute or contradict [the defendant]'s sworn Declaration." *United States v. Sanders*, No. 13-00312, 2021 WL 78869, *2 (E.D. Cal. Jan. 6, 2021) (alternations in original) (quoting *United States v. McKeel*, No. 16-0088, 2020 WL 3980032, at *2 (S.D. Miss. July 14, 2020), *recons. denied*, 2020 WL 5083863 (S.D. Miss. Aug. 26, 2020)).

Here, Mr. Figueroa claims in a declaration submitted under penalty of perjury that he submitted a request for release to the Warden of FCI Sheridan on September 30, 2020 and has received no response. Figueroa Decl. ¶ 4, ECF No. 158-1. The government claims to have no records of any such request. *See* Opp'n at 4. But it has not submitted any evidence to support that claim, such as an explanation of its search for a request or recordkeeping procedures. The record thus supports Mr. Figueroa's claim he has met the exhaustion requirement of § 3582(c)(1)(A).

**B.     Extraordinary and Compelling Reasons**

Many federal district courts, including this court, have held in recent months that defendants can demonstrate "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A)(i) if they show (1) their health conditions put them at an increased risk of severe COVID-19 and (2) they are at risk of infection because their facility is currently suffering from a COVID-19 outbreak or is at risk of an outbreak, for example because it is a congregate living facility in which inmates and staff cannot consistently maintain safe physical distances. *See, e.g.*, *United States v. Terraciano*, ___ F. Supp. 3d ___, No. 17-00187, 2020 WL 5878284, at *3–4 (E.D. Cal. Oct. 2, 2020). Recent or ongoing rises in the reported number of infections might make for a stronger showing of "extraordinary and compelling reasons," but spikes and outbreaks have not always been necessary to support motions under § 3582(c)(1)(A), which call for fact-intensive analyses. *See id.* at *3.

Here, first, Mr. Figueroa's health conditions increase his risk of severe illness from COVID-19. His body mass index, which is above 30, is in a range known to increase the risk of severe symptoms. *See* U.S. Ctrs. for Disease Control & Prevention, "People with Certain Medical Conditions" (Mar. 15, 2021) ("Having . . . a body mass index (BMI) between 30 kg/m2 and <40 kg/m2 . . . increases your risk of severe illness from COVID-19.").[1] Moderate to severe asthma might also increase the risk of severe illness from COVID-19. *See id.* Whether Mr. Figueroa's asthma is "moderate to severe" is unclear, but he has regularly suffered from a shortness of breath and a cough, and he has used albuterol and mometasone furoate inhalers. *See* Opp'n Ex. 2 at 5–6 (under seal[2]). Similar health conditions have supported compassionate release in other cases. *See, e.g.*, *United States v. Rodriguez*, 476 F. Supp. 3d 1071, 1074–76 (S.D. Cal.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited Mar. 23, 2021. The court takes judicial notice of this information. *See, e.g.*, *Dubrin v. Cty. of San Bernardino*, No. 15-589, 2017 WL 8940181, at *21 n.14 (C.D. Cal. Sept. 7, 2017), *report and recommendation adopted*, 2017 WL 4339645 (C.D. Cal. Sept. 29, 2017).

[2] The requests to file Mr. Figueroa's private medical records under seal are granted. *See Chester v. King*, No. 1:16-cv-01257, 2019 WL 5420213, at *2, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

1  2020) (granting motion for compassionate release for defendant suffering from asthma and
2  obesity; summarizing research showing risks of severe COVID-19 associated with asthma).
3    Second, Mr. Figueroa's risk of infection is more difficult to assess. Although inmates and
4  staff at FCI Sheridan have recently been infected with COVID-19, the number of reported active
5  cases has been consistently declining. Documents recently filed in an action pending in the
6  District of Oregon report that "the situation at FCI Sheridan remains stable following a sharp
7  increase" in confirmed active COVID-19 cases in December. *See* Joint Status Rep. ¶ 1, *Stirling v.*
8  *Salazar*, No. 20-712 (D. Or. Mar 12, 2021), ECF No. 66.[3] People with active cases are isolated.
9  *See id.* ¶ 6. There were 41 reported active cases in late December; 35 in early January; 14 in late
10 January; three in early February; and zero in late February. *See id.* The most recent data show
11 one inmate tested positive in mid-March and was in quarantine. *See id.* No inmates at FCI
12 Sheridan have needed to use a ventilator, and none has died. *Id.* ¶ 1. COVID testing is also
13 ongoing. More than 6,500 tests were administered in 2020, and 74 tests for inmates were pending
14 in early February. *See* Joint Status Rep. ¶ 1.d., *Stirling v. Salazar*, No. 20-712 (D. Or. Feb. 5,
15 2021), ECF No. 62.[4]
16   Neither party has described the living conditions at FCI Sheridan in any detail. Federal
17 courts have reached conflicting decisions about the risk of infection there. Some have denied
18 motions for compassionate relief because the risk of infection appeared low. *See, e.g.*, *Becerra*,
19 2021 WL 535432, at *7; *United States v. Black*, No. 13-0078, 2020 WL 5887640, at *3 (N.D.
20 Ind. Oct. 5, 2020); *United States v. Wells*, 16-0007, 2020 WL 5118165, at *2 (W.D. Wash. Aug.
21 31, 2020); *United States v. Stanard*, No. 16-0320, 2020 WL 2219478, at *3–4 (W.D. Wash. May
22 7, 2020). Others have granted motions for compassionate release to inmates residing at FCI
23 Sheridan, even when the number of reported infections is low or even zero, because the risk of
24 rapidly spreading disease is high in congregate living facilities. *See, e.g.*, *United States v. Morris*,

---

[3] The court may take judicial notice of public records such as these. *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). The court also concludes that the contents of these reports is undisputed; Mr. Figueroa relies on documents filed in the *Stirling* litigation without opposition or objection by the government. *See* Mot. at 10.

[4] *See supra* note 3.

No. 99-0174, 2020 WL 4344945, at *3 (W.D. Wash. June 22, 2020); *United States v. Moore*, 466 F. Supp. 3d 1148, 1150–51 (D. Or. 2020); *United States v. Etzel*, 466 F. Supp. 3d 1135, 1139 (D. Or. 2020).  Last year, this court joined the latter group and held that conditions at FCI Sheridan were risky enough to show the circumstances were extraordinary and compelling.  *See United States v. Sharma*, No. 15-00051, 2020 WL 6802404, at *4 (E.D. Cal. Nov. 19, 2020); *United States v. Bradley*, No. 14-00293, 2020 WL 3802794, at *6 (E.D. Cal. July 7, 2020).  This assessment appeared to be correct; an outbreak later took hold in December even though the number of reported cases was zero as recently as two months before.  *See Black*, 2020 WL 5887640, at *3.  Reports filed in litigation about the conditions at FCI Sheridan also cast doubt on the effectiveness of the prison's response to COVID-19.  *See, e.g.*, Whithycombe Decl. at 9–11, *Stirling v. Cooper*, No. 20-712 (D. Or. filed Jan. 8, 2021), ECF No. 57-1 (relaying reports of officers not wearing masks and inmates declining to be tested because they do not want to be reassigned to the gym where inmates with positive tests are quarantined, for example).[5]

      The court's prior conclusion, based on the record at the time, does not mean of course that conditions at FCI Sheridan will always be unsafe for every defendant.  "Every case involving a motion for compassionate release must be assessed on its individual merits."  *Becerra*, 2021 WL 535432, at *7.  Since this court's previous orders were issued, for example, vaccine doses have been delivered to many of the Bureau's facilities, including FCI Sheridan.  *See* Joint Status Rep. ¶ 3, *Stirling v. Salazar*, No. 20-712 (D. Or. Mar. 12, 2021), ECF No. 66.  This month, FCI Sheridan received a third allotment of COVID-19 vaccine doses manufactured by Moderna, which were administered to 483 inmates and 17 staff.  *Id.*  About 150 inmates and 150 staff were fully vaccinated in January and February, a little more than ten percent of the total population.  *See id.* ¶¶ 3–4.  A fourth allotment of 500 doses is expected in April.  *See id.* ¶ 3.

      Mr. Figueroa was offered a first dose of the Moderna COVID-19 vaccine, but he declined.  *See* Opp'n Ex. 2 at 37.  In an unsworn email to his attorney attached to his reply brief, he claims

---

[5] *See supra* note 3.  These are examples of the "numerous, frantic complaints about the conditions of Sheridan" voiced to the petitioner's counsel in that case.  *See* Joint Status Rep. ¶ 2.a, Stirling v. Cooper, No. 20-712 (D. Or. filed Jan. 8, 2021), ECF No. 57.

1  he was following the advice of a nurse, who told him not to accept a vaccine because he has a
2  history of allergic reactions to some foods and medicines. *See* Reply Ex. A, ECF No. 166-1. It is
3  unclear whether this advice, assuming he received it and reported it accurately, was consistent
4  with guidance from the CDC. The CDC "recommends that people get vaccinated even if they
5  have a history of severe allergic reactions not related to vaccines or injectable medications—such
6  as food, pet, venom, environmental, or latex allergies." U.S. Ctrs. for Disease Control &
7  Prevention, "Information about COVID-19 Vaccines for People with Allergies" (Mar. 4, 2021).[6]
8  "People with a history of allergies to oral medications or a family history of severe allergic
9  reactions may also get vaccinated." *Id.* But people who have had "an immediate allergic
10 reaction—even if it was not severe—to a vaccine or injectable therapy for another disease"
11 should ask their doctor if they should be vaccinated. *Id.* Mr. Figueroa's medical records show he
12 has reported allergies to penicillin, iodine, and shellfish, but not vaccines. *See* Opp'n Ex. 2 at 11,
13 14, 25, 28, 32, 39. Mr. Figueroa claims in his email that he has had allergic reactions to "other
14 things . . . that are vaccine meds," but he cannot or does not explain any further. *See* Reply Ex.
15 A. Nor do his medical records include any evidence to support his claim.

16       The uncertainties about Mr. Figueroa's suitability to receive a vaccine, as offered to him,
17 raise questions for the court, particularly given the lack of evidentiary support. If defendants
18 could buttress their motions for compassionate release by refusing a safe and effective vaccine,
19 they would be operating on an unfairly perverse incentive. In the worst case scenario, this
20 incentive might lead a person to unreasonably refuse necessary and readily available medical
21 treatment in an effort to create "extraordinary and compelling" circumstances when none exist.
22 *See United States v. Gonzalez Zambrano*, No. 18-2002, 2021 WL 248592, at *5 (N.D. Iowa
23 Jan. 25, 2021) ("It would be paradoxical to endorse a system whereby a defendant could
24 manufacture extraordinary and compelling circumstances for compassionate release by
25 unreasonably refusing the health care afforded to them."). Equally concerning, defendants who

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/allergies.html, last visited Mar. 23, 2021. The court takes judicial notice of it. *See supra* note 1.

harbor no improper motives might hesitate to accept a vaccine when they should not wait, putting themselves and others in the prison at risk. Consider, for example, someone who vaguely remembers a childhood inflammation and thinks it might have had something to do with a vaccine. Consciously or not, he might emphasize or embellish that memory if he has heard he might damage his case for compassionate release if he accepts a vaccine. Certainty about the underlying facts and reliable professional judgments are thus necessary to reduce the risk of unintended consequences. Here, the court has neither.

In sum, the current record is inconclusive as to Mr. Figueroa's risks. On the one hand, testing is ongoing at FCI Sheridan, the number of confirmed active cases has been steadily low, inmates who test positive are isolated, and vaccines are being administered to both staff and inmates. The prison even offered Mr. Figueroa, specifically, a vaccine. These efforts appear to have been successful so far. No inmate at FCI Sheridan has had such a serious case that a ventilator became necessary, and no inmates have died. All of this information weighs in favor of a finding, as of this writing, that "self-care" against COVID-19 "within the environment of a correctional facility" is possible for inmates like Mr. Figueroa at FCI Sheridan. *See* U.S.S.G. § 1B1.13 Application Notes. On the other hand, Mr. Figueroa has health conditions that increase his risk of a serious case of COVID-19, the number of reported active cases of COVID-19 at FCI Sheridan is not zero, and this court not long ago had concerns that were validated, that conditions at Sheridan risked outbreaks. Relatively recent reports about the conditions in the prison are also concerning. *See supra* at 7. While Mr. Figueroa claims to be ineligible for a vaccine based on his history of allergic reactions, the information supporting his claims is inadmissible and appears to be at odds with judicially noticeable guidance from the CDC.

Mr. Figueroa bears the burden to show his medical conditions and the environment at FCI Sheridan create extraordinary and compelling circumstances warranting his release. He has not done so on this record. *See Becerra*, 2021 WL 535432, at *7 (denying release to inmate at FCI Sheridan with obesity, asthma, and other conditions in similar circumstances).

/////

### C. Section 3553(a) Sentencing Factors

Even if Mr. Figueroa had established he faces a high risk of severe COVID-19, he would not be entitled to relief under § 3582(c)(1)(A) automatically. As summarized above, before a motion for compassionate release can be granted, the court must also be satisfied (1) the requested reduction would not conflict with the factors listed in 18 U.S.C. § 3553(a) and (2) release would not put the community at risk.

The court cannot reach that conclusion here. Mr. Figueroa is serving a term of incarceration after violating the conditions of a previous supervised release. This history weighs against his motion. *See, e.g.*, *United States v. Colbert*, No. 18-0158, 2021 WL 22584, at *4 (W.D. Wash. Jan. 4, 2021) (denying motion for supervised release because defendant had "committed [the offense in question] shortly after coming off supervised release for a different federal controlled substances conviction"). Rather than explaining how he will avoid the pitfalls that led him to violate California drug and weapons laws during his previous release, Mr. Figueroa offers only generalities about recovery resources, healthcare, IDs, jobs, and similar topics. *See generally* Release Plan, Mot. Ex. C, ECF No. 158-3. The court cannot conclude on this record that his release would not put the community at risk.

### IV. CONCLUSION

The motion for compassionate release is **denied without prejudice to renewal** to address the shortcomings identified in this order, if possible. The requests to file under seal are **granted**.

This order resolves ECF Nos. 158, 159 and 165.

IT IS SO ORDERED.

DATED: March 23, 2021.

CHIEF UNITED STATES DISTRICT JUDGE